Motion to dismiss appeal denied May 18, 1915.
Argued on the merits March 14, modified April 4, 1916.

## SMITH *v.* DWIGHT.

(148 Pac. 477; 156 Pac. 573.)

**Appeal and Error—Bonds—Amendment.**

1. An amended undertaking on appeal given in response to a motion to dismiss, questioning the sufficiency of the undertaking, should have been filed upon leave obtained from the Supreme Court, and as an independent pleading in the proceeding.

**Appeal and Error—Notice of Appeal—Defects—Cure by Undertaking.**

2. Where the notice of appeal did not name the court to which the appeal was taken, an amended undertaking describing the judgment as appealed to the Supreme Court might be considered as in aid of the notice, especially as it would seem that on an appeal from a judgment of the Circuit Court, which can be appealed only to the Supreme Court, the failure to name the court is immaterial.

**Names—"Idem Sonans."**

3. In a tax foreclosure proceeding, the names "Lewis" and "Louis," under common usage and pronunciation, were *"idem sonans,"* which rule is that, if two names, although spelled differently, sound alike, they are considered as the same, and which holds if the attentive ear finds difficulty in distinguishing them when pronounced, or common and long-continued usage has made them identical in pronounciation; absolute accuracy in spelling names is not required in legal proceedings, as the law does not regard the spelling of names so much as their sound.

[As to law of *idem sonans,* see note in 100 Am. St. Rep. 322.]

**Taxation—Tax Sale—Name—Statute.**

4. Under section 3586, L. O. L. providing that no assessment shall be invalidated by a mistake in the names of the owner of real property assessed, Section 3701, providing that no assessment for taxes shall be considered illegal on account of any irregularity in

the changing or listing the taxes to any other name than that of the owner, and Section 3710, providing that any judgment for the sale of real estate shall estop all parties from raising any objection thereto or to a tax title based thereon which existed before such judgment, and could have been presented as a defense to an application therefor, a tax foreclosure was not void because, where the true name of "Lewis" L. Smith was written on the complaint, a copy of which was served with the summons, the summons itself was directed to "Louis" L. Smith, where it was not claimed that the tax had been paid or that the property was not liable to tax levy.

**Taxation—Tax Sale—Description of Property—Statute.**

5. The description in an assessment-roll of 80 acres designated as the "NE. of SE.¼ and SE. of NE.¼," omitting the "¼," was an abbreviation permitted by Section 3598, L. O. L., permitting an abbreviation in the description of lands assessed, as anyone reading the description could not fail to understand what land was assessed, and, at most, it was a mere irregularity.

[As to sufficiency of tax deed with reference to description of grantee, see note in Ann. Cas. 1913A, 1195.]

**Taxation—Tax Deed—Acknowledgment—Statute.**

6. Under Section 3702, L. O. L., providing that a sheriff's tax deed shall be recorded "without the sealing, witnessing, or acknowledgment," the recording officer is simply required to take official notice of the sheriff's signature, and it is not necessary that his deed be acknowledged or witnessed.

**Taxation—Tax Sale—Whole or Part—Statute.**

7. Under Section 3701, L. O. L., providing that at a tax sale the person offering to pay the amount due on each tract for the least quantity shall be the purchaser of such quantity, which shall be taken from the east side of such tract, and the remainder discharged from the lien, a sheriff's tax sale of a quarter-section of land valued at $7,000 for taxes, and interest, amounting to $110.60, without showing that the land was offered for sale in accordance with the law or whether the eastern or what parcel was first offered, or in how many parcels or for what the several parcels were sold, in view of the finding that the purchaser was the only bidder, was inequitable and unconscionable.

**Taxation—Action to Try Tax Title—Payment of Assessment.**

8. Where the property of a person is subject to a tax under the law, he must conform to the requirements of equity and pay the assessment before he can successfully maintain a suit to defeat a tax title outstanding against his land.

**Taxation—Tax Deed—Burden of Proof—Irregularity.**

9. Under Section 3709, L. O. L., making a sheriff's tax deed *prima facie* evidence that the sale was legally conducted, the owner has the burden of proving irregularity, and his showing that an entire quarter-section valued at $7,000 was sold for liens totaling to $110 overcame the *prima facie* showing of regularity.

[As to effect of recitals in tax deed as evidence, see note in 31 Am. St. Rep. 233.]

**Pleading—Sufficiency of Complaint—Cure by Judgment.**

10. A complaint declaring upon the stated account that defendant promised to pay the amount found due upon a settlement was sufficient after verdict or judgment.

**Attachment—Lien—Judgment.**

11. Under Section 308, L. O. L., providing that, if judgment is recovered for plaintiff, the court shall order the attached property sold to satisfy his demands, a judgment for the amount demanded, not providing that the attached property should be sold to satisfy it or preserve the attachment lien, operated as a waiver of the lien.

**Execution—Form of Writ—Judgment.**

12. Under a default judgment, not providing that the attached property should be sold to satisfy it, an attachment execution commanding the sheriff to sell the attached realty, describing the land as in "10 west," without giving the range or county in which it was situated, was not authorized by the judgment.

**Execution—Levy—Statute.**

13. Under Section 233, L. O. L., directing that, when the writ of execution is against the property of the debtor, it shall be executed by levy, according to Section 300, which requires a writ of attachment to be executed by delivering to the county clerk the designated certificate showing that the property has been attached, the failure to docket the judgment in the lien docket or to make any further levy was a failure to levy, where the attachment lien had been waived.

**Execution—Levy—Requisites.**

14. A levy of writ is not an essential requirement, where there is a pre-existing lien of the judgment upon the property to be sold.

From Tillamook: WEBSTER HOLMES, Judge.

This is a suit by Lewis L. Smith against W. G. Dwight, in which there was a decree in favor of plaintiff and defendant appeals. Respondent moves to dismiss the appeal.        DENIED.

*Mr. T. B. Handley* and *Mr. Frank Holmes,* for the motion.

*Mr. C. W. Talmage* and *Mr. E. J. Claussen, contra.*

In Banc. MR. JUSTICE EAKIN delivered the opinion of the court.

1, 2. This is a motion to dismiss an appeal for a defect in a notice. This notice is admitted to be suffi-

cient, except that it does not name the court to which the appeal is taken. The notice was served on the sixteenth day of February, 1915, and the motion to dismiss was served on the 14th of April, nearly two months afterward. An amended undertaking was given in response to the assignment in the motion to dismiss, which questions the sufficiency of the undertaking also. The new undertaking describes the judgment as being appealed to the Supreme Court of the State of Oregon, and remedies other defects therein. This amended undertaking should have been filed upon a leave obtained from this court, and as an independent pleading in said proceeding; but overlooking that omission, which is not questioned, it may be considered as in aid of the notice both as to the description of the court to which the appeal was taken and the judgment from which it is taken. Under the authority of *Holton* v. *Holton,* 64 Or. 290 (129 Pac. 532, 48 L. R. A. (N. S.) 779), the amended undertaking aids the notice of appeal by designating the court to which the appeal was taken. However, when an appeal is from a judgment of the Circuit Court which can be appealed only to the Supreme Court of the state, it would seem to be an immaterial error to omit the naming of such court. It is said in 2 Cyc. 813, that failure to specify the court to which the appeal is taken, there being only one court to which it may be taken, will not be considered as fatal to the jurisdiction of this court. In *Holton* v. *Holton,* 64 Or. 290 (129 Pac. 532, 48 L. R. A. (N. S.) 779), this point was made in the motion in that case, and the notice was held sufficient.

The motion to dismiss is denied.            DENIED.

Modified April 4, 1916.

ON THE MERITS.

(156 Pac. 573.)

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit to quiet title to the west half of the southwest quarter of section 1, and the northeast quarter of the southeast quarter and the southeast quarter of the northeast quarter of section 2, township 1 north, range 10 west of the Willamette Meridian, in Tillamook County, Oregon.    From a decree in favor of the plaintiff, defendant appeals.    The complaint is in the usual form in such cases.

In his answer defendant denies the plaintiff's title, and further sets up as his muniments of title to the land a sheriff's deed executed pursuant to a decree of foreclosure of a delinquent tax certificate, and the other a sheriff's deed upon sale on execution of a judgment in the County Court.    The reply put in issue the affirmative matter of the answer.            MODIFIED.

For appellant there was a brief over the names of *Mr. C. W. Talmage* and *Mr. E. J. Claussen,* with an oral argument by *Mr. Talmage.*

For respondent there was a brief over the names of *Mr. Frank Holmes* and *Mr. T. B. Handley,* with an oral argument by *Mr. Holmes.*

MR. JUSTICE BEAN delivered the opinion of the court.

If defendant maintains title to the realty by virtue of either of the alleged proceedings he must prevail; otherwise not.    We will first take up the matter of

the decree of foreclosure of the delinquent tax certificate, the sale and sheriff's deeds thereunder. The record discloses that in 1896 plaintiff obtained a patent for the land from the government of the United States. The following appears upon the assessment-roll for Tillamook County for the year 1907:

| | | |
|---|---|---|
| Smith, Louis L.   West one-half of Southwest one-quarter. | Sec. 1, | Tp. 1 North, Range 10 west, Willamette Meridian. |
| Smith, Louis L.   Northeast of Southeast one-quarter & Southeast of Northeast one-quarter. | Sec. 2, | Tp. 1 North, Range 10 west, Willamette Meridian. |

—with a total tax of $18.40 extended and carried to the delinquent column. This tax not being paid, a certificate of delinquency for it, amounting, with interest, penalties and costs, to $22.40 was issued to W. G. Dwight, who paid the taxes on the land for the years 1908 and 1909, in the sums of $28.93 and $28.58, respectively. On December 9, 1911, Dwight instituted a suit in the Circuit Court and filed a complaint against "Lewis" L. Smith to foreclose his lien on the land for the amount of the certificate and taxes paid, with interest. A summons was issued therein directed to "Louis" L. Smith requiring him to appear and defend or pay the amount due within 60 days after service thereof or a decree would be entered foreclosing the lien of the taxes and costs against the real estate. The return of the sheriff shows that the summons, together with a duly certified copy of the complaint, was personally served upon the defendant "Louis" L. Smith within said county on February 10, 1912. Defendant in writing accepted service in the case, signing his name "L. L. Smith." On April 16, 1912, by default plaintiff was given a judgment against the property described for the amount of the certificate mentioned and the taxes he had paid, with accrued interest and costs, $7, aggregating $110.60.

It was therein adjudged as follows: "Which said judgment shall be a several judgment against each tract or lot, or part of a tract or lot of land, hereinbefore mentioned in the amounts set opposite thereto." It was "further ordered and decreed that the sheriff of this county sell said real property or so much thereof as may be necessary to satisfy said judgment, with accruing costs, and that the clerk of this court make out and deliver to the sheriff a certified copy of this decree as his authority to make said sale." Notices of sale were posted by the sheriff as provided by the statute, and the several subdivisions of land described were sold together to W. G. Dwight for the amount of the judgment. A return of the sale was certified and a deed of the land to plaintiff was executed by the sheriff in statutory form.

3. It is insisted by plaintiff's counsel that the tax deed is void, for the reason that the land was assessed to "Louis" L. Smith instead of "Lewis" L. Smith, the true name of the owner, and that some of the subsequent proceedings were against plaintiff as "Louis" L. Smith. This position is untenable. Common usage and pronunciation make the name "Louis" L. Smith and "Lewis" L. Smith *idem sonans*. For the pronunciation of "Louis," see Century Dictionary, 1914 edition, volume 6, page 623. The law does not regard the spelling of names so much as their sound. According to the doctrine of *idem sonans,* if two names, although spelled differently, sound alike, they are considered as the same: 29 Cyc., p. 272 et seq., and notes. *Idem sonans* is said to exist if the attentive ear finds difficulty in distinguishing them when pronounced, or common and long-continued usage has made them identical in pronunciation. Absolute accuracy in spelling names is not required in

legal proceedings: 4 Words and Phrases, p. 3380; 14 Ency. Pl. & Pr., p. 288. This principle applies to "Louis" and to "Lewis": *Block* v. *State,* 66 Ala. 493; *Marr* v. *Wetzel,* 3 Colo. 2.

4. Section 3586, L. O. L., as it then existed, provided that no assessment should be invalidated by a mistake in the name of the owner of real property assessed. Section 3701 directs in part that:

> In all such judicial proceedings "no assessment of property or charge for any of said taxes shall be considered illegal on account of any irregularity in the assessment-rolls, or on account of the assessment-rolls not having been made, completed and returned, within the time required by law, or on account of the property having been charged or listed in the assessment or tax-roll without any name, or with any other name than that of the owner; and no error or informality in the proceedings of any of the officers connected with the assessment, equalization, levying, or collection of taxes shall vitiate or in any manner affect the tax or the assessment thereof; and any irregularities or informalities in the assessment-rolls or tax-rolls, or in any of the proceedings connected with the assessment or levy of such taxes, or any omission or defective act of any officer or officers connected with the assessment, equalization, or levying of such taxes, may, in the discretion of the court, be corrected, supplied, and made to conform to law by the court. The court shall give judgment and decree for such taxes, assessments, penalties, interests, and costs, as shall appear to be due upon the several lots or tracts described in said summons and application for judgment and decree, and such judgment and decree shall be a several judgment against and lien upon each tract or lot, or part of a tract or lot, for each kind of tax or assessment included therein, including all penalties, interest, and costs."

The tax proceedings and foreclosure were not void on account of the name. The complaint, a copy of

which .was served upon defendant with the summons, contained his name as written in the patent. Section 3710, L. O. L., provides:

"Any judgment or decree for the sale of real estate, as provided in this section, shall estop all parties from raising any objections thereto, or to a tax title based thereon, which existed at or before the rendition of such judgment and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered; and as to all such questions the judgment or decree itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or assessments have been paid, or the real estate was not liable to the tax or assessment, and the judgment or decree shall be *prima facie* evidence that the tax or assessments have not been paid, and that the real estate conveyed was subject to taxation at the time the same was assessed. No certificate of delinquency or sale of land for taxes, or deed made in pursuance thereof, shall be of any validity if the taxes for which the certificate was issued shall have been paid prior to the issuance of such certificate: Provided," etc.

There is no claim made that the taxes have been paid or that the real estate was not liable to the several levies.

5. Objection is made by plaintiff to the description in the assessment-roll for 1907 of the 80 acres designated as "northeast of southeast quarter and the southeast of the northeast quarter of section 2, Tp. 1 north, Range 10 west, Willamette Meridian," for the reason that the "¼" is omitted. This is practically an abbreviation which is permitted by Section 3598, L. O. L. Any person reading the description cannot fail to understand what land is assessed. At the most, this is a mere irregularity. All objection of this kind should have been made by plaintiff in the foreclosure suit, and he is now precluded from making

the same by virtue of Section 3710, L. O. L. The judgment in the foreclosure suit is a valid lien upon the land for the amount thereof: *Hoskins* v. *Dwight,* 69 Or. 558 (139 Pac. 922); *Washington Timber & Loan Co.* v. *Smith,* 34 Wash. 625 (76 Pac. 267).

6. Exception to the sheriff's deed is also taken by the plaintiff because it is not acknowledged or witnessed. It is in the form provided by Section 3702, L. O. L., which enacts that such a deed shall be recorded "without sealing, witnessing, or acknowledgment." This simply requires the recording officer to take official notice of the signature of the sheriff. The deed is not vulnerable to this objection.

7, 8. It is contended by counsel for plaintiff that under Section 3701, L. O. L., only that part of the land necessary to pay the tax should have been sold, and not the whole estate. The provision thereof relating to the sale is as follows:

"At such sale the person offering to pay the amount due on each tract or lot for the least quantity thereof shall be the purchaser of such quantity, which shall be taken from the east side of such tract or lot, and the remainder thereof shall be discharged from the lien. In determining such piece or parcel of such lot or tract, a line is to be drawn due north and south, far enough west of the eastern point of tract to make the requisite quantity. The sheriff may include in one notice any number of separate tracts or lots. No confirmation of any sale is required or necessary."

Prior to the passage of this law in 1907 tax titles and assessments were often found to be defective, and the act, some of the sections of which have been referred to already, was doubtless intended to remedy this evil by providing for the foreclosure of certificates of delinquency. The proceedings, especially upon a sale, were radically changed from what they had

theretofore been: See *Hoskins* v. *Dwight,* 69 Or. 558 (139 Pac. 922).

It was shown upon the trial that the land in question was of the value of $7,000. In order for the government to be maintained, taxes must be paid. It is a well-settled rule that, where the property of a person is subject to the tax under the law, before he can successfully maintain a suit to defeat a tax title outstanding against his land he must conform to the requirements of equity and pay the assessment. Plaintiff has not done so. How much of his land should be sold? Both the statute and the decree of the court, in effect, direct that a sufficient amount of the land shall be sold to satisfy the tax judgment. The law quoted above enacts that "the person offering to pay the amount due on each tract or lot for the least quantity thereof shall be the purchaser," and directs that such quantity shall be taken from the east side thereof, and the remainder discharged from the lien. Therefore the sheriff's return of the sale should show that the land was offered for sale in such a manner as to enable one to bid therefor in accordance with the law. The return of sale discloses that the property was exposed "for sale in separate parcels" at public auction, etc. It does not appear whether the eastern or what parcel was first offered, or whether the land was offered in 1-acre or 80-acre tracts, or in what amount, or in how many parcels, or for what the "separate parcels" were sold. The plain intent of the statute was to avoid an unnecessary sale of the whole of a large, valuable tract for a small tax. The law is mandatory, and must be strictly construed. It is designed to protect the property holder: *Commercial Bank* v. *Sanford* (C. C.), 103 Fed. 98, 102. No good cause can be conceived for selling property

valued at $7,000 to satisfy a lien of $110.60. It amounts to a confiscation of plaintiff's land: *Brentano* v. *Brentano,* 41 Or. 15, 19 (67 Pac. 922). The sale is inequitable and unconscionable.

While the return shows that the purchaser was "the best bidder," and the "tract being the least quantity bid," it follows that there was no other bid. The law being somewhat new in operation, it would seem that the essentials thereof were not complied with in substance: See 37 Cyc. 1343. An officer executing his process, whether it be an execution upon a judgment or a decree vesting in him power to sell delinquent land, should not make an excessive levy or sale. He should exercise his authority so as to obtain the amount due without causing unnecessary injury to the debtor or delinquent taxpayer. A text-writer says:

"If there be no statute regulating the matter, the same principle would be enforced by the courts": Burroughs on Taxation, pp. 304, 305; 2 Cooley on Taxation, p. 953; *Townsend etc. Bank* v. *Todd,* 47 Conn. 190; *Margraff* v. *Cunningham's Heirs,* 57 Md. 585.

"A sale of the whole when less would pay the tax would be such a fraud on the law as to render the sale voidable at the option of the land owner, and the deed would be void on its face if it showed the fact of such excessive sale": 2 Cooley on Taxation, p. 953; *Commercial Bank* v. *Sanford,* (C. C.), 103 Fed. 98, 102; *Allen* v. *Morse,* 72 Me. 502.

A tax sale under our present statute is not required to be confirmed. The taxpayer in default is seldom present; hence the proceedings should be closely scrutinized, and, wherever the rights of the delinquent taxpayer have not been accorded the protection which the law affords, the sale should be set aside: 2 Cooley, Taxation (3 ed.), p. 943. We do not intend to criticise

the form of the return of the sale in the present case. The difficulty is that the substance is wanting in the printed return. If it were shown that a less number of acres had been offered or that there had been a refusal to purchase a less quantity, or indicated in any informal way that the statute had been observed, and not entirely overlooked, the proceedings would have more of an appearance of fairness: *Roth* v. *Gabbert,* 123 Mo. 21 (27 S. W. 528); *Reynolds* v. *Lincoln,* 71 Cal. 183 (9 Pac. 176, 12 Pac. 449).

9. We have not disregarded Section 3709, L. O. L., making a sheriff's tax deed *prima facie* evidence of the following facts:

"1. That the real estate conveyed was subject to taxation at the time the same was assessed in the time and manner required by law.

"2. That the taxes or assessments were regularly levied, and were not paid at any time before the issuance of the deed.

"3. That the real estate conveyed had not been redeemed from the sale at the date of the deed.

"4. That the real estate was duly sold for taxes, assessments, penalties, and costs as stated in the deed.

"5. That the grantee in the deed was the purchaser or assignee of the purchaser.

"6. That the sale and all antecedent proceedings were conducted in the manner required by law."

This changes the burden of proof to the owner or taxpayer, and the *prima facie* showing is overcome by the undisputed evidence that the entire quarter-section is of the value of $7,000 and the facts shown by the proceedings in the record. The deed should be rejected, and the sale canceled.

10. We come next to the sale upon an execution issued on the judgment against Smith in the County Court. Talmage & Johnson commenced this action to recover the sum of $100. Counsel for Smith contend

that the complaint therein is insufficient upon which to base a judgment. This claim is without merit. The complaint declared upon a stated account that defendant promised to pay the amount found due upon the settlement, and is sufficient at least after verdict or judgment.

11. The record shows that summons was issued and' served personally within the county, and that in that action a writ of attachment was issued and levied upon the land in question. On June 1, 1911, judgment by default was duly rendered for the amount demanded, but did not provide that the attached property should be sold to satisfy the same or preserve the attachment lien. To preserve and continue such a lien the judgment order must direct the sale of the property seized and the entry in an attachment action of a simple money judgment operates as a waiver of the lien: Section 308, L. O. L., *Bremer* v. *Fleckenstein,* 9 Or. 266, 271; *Moore Mfg. Co.* v. *Billings,* 46 Or. 401, 403 (80 Pac. 422); *Mertens* v. *Northern State Bank,* 68 Or. 273 (135 Pac. 885).

12. Nevertheless an attachment execution was issued commanding the sheriff to sell the attached realty, namely, the land in controversy, describing the same, however, as in "10 west," without giving the range or county in which it is situated: See *Hoskins* v. *Dwight,* 69 Or. 558 (139 Pac. 922). This writ was not authorized by the judgment to be issued. *Hamilton* v. *Powers,* 80 Mich. 313 (45 N. W. 580).

13, 14. It is not shown that the judgment was docketed in the lien docket. No further levy appears to have been made. Section 233, L. O. L., directs that:

"When the writ of execution is against the property of the judgment debtor, it shall be executed by the sheriff, as follows: * * 4. Property shall be levied on in like manner and with like effect as similar prop-

erty is attached, as provided in Sections 300, 301, and 303.''

Section 300 requires a writ of attachment to be executed by delivering to the county clerk the designated certificate showing the property has been attached. The attachment lien having been waived there was no compliance with the law or any levy made. The sheriff proceeded to advertise the land as defectively described, and sold the same to the defendant's assignor. In due time a sheriff's deed was executed to defendant therefor.

Plaintiff's counsel made timely objection to all the record evidence. 1 Freeman on Executions, Section 41, states in part:

''Where a writ was issued against special property upon the theory that the plaintiff had a lien thereon, and it was determined that such a lien did not exist, and that the plaintiff was entitled to a general execution only, it was said that the special execution was void and should be quashed, but that, where the execution was general in form, it was not rendered void by a mistaken assertion or recital therein that a lien existed on certain described property.''

A levy of a writ is not an essential requirement when there is a pre-existing lien of the judgment upon the property to be sold; but, where the statute requires a levy to be made in a certain manner in order to make a proper record, it should be complied with: *Hamblen* v. *Hamblen*, 33 Miss. 455 (69 Am. Dec. 358); 2 Freeman, Executions, § 280. The amount of the judgment is about the same as that of the tax judgment, and many of the comments we have made touching upon the tax sale apply with equal force to the execution sale. In view of the defects mentioned in the action in the County Court which is limited in its jurisdiction and the subsequent proceedings thereunder and

the equities of the case, the objection to the judgment-roll should be sustained, and the same held for naught.

The decree of the lower court should be so modified as to declare the plaintiff Louis L. Smith to be the owner in fee of the land described in the complaint, subject to the lien of the tax decree in the Circuit Court and subject to the judgment in the action in the County Court in the event that proper proceedings are taken to subject the land to a lien thereof; neither party to recover costs in this court.                    MODIFIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE HARRIS and MR. JUSTICE BENSON concur.